UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DENNIS MARCUM, JR.,

      Plaintiff,

v.                                        Civil Action No. 16-2297

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are the objections filed on January 23, 2017, by plaintiff Dennis Marcum, Jr. ("plaintiff") to the magistrate judge's proposed findings and recommendation ("PF&R").

I.   <u>Procedural history</u>

On March 10, 2016, plaintiff instituted this civil action pursuant to 42 U.S.C. § 405(g).  Plaintiff seeks judicial review of the Commissioner's administrative decision denying his application for disability insurance benefits and supplemental security income.

This action was referred to United States Magistrate Judge Omar J. Aboulhosn for consideration, pursuant to 28 U.S.C. § 636(b)(1)(B) and standing order in this district.  The

magistrate judge filed his PF&R on December 19, 2016.  In that document, the magistrate judge recommends that the Commissioner's final decision be affirmed, that plaintiff's motion for judgment on the pleadings be denied, that the motion for judgment on the pleadings filed by defendant Carolyn W. Colvin ("the Commissioner") be granted, and that this action be dismissed from the docket.[1]  See PF&R, 23.  On January 23, 2016, plaintiff filed objections to the PF&R.  The Commissioner has not responded to the objections.

Plaintiff objects to the magistrate judge's determination that the ALJ's step three analysis was adequate and states that it was not supported by substantial evidence. See Plaintiff's Objections to PF&R ("Obj."), 2.

## II.   Standard of review

The court reviews de novo those portions of the magistrate judge's PF&R to which objections are timely filed. 28 U.S.C. § 636(b)(1)(B); see Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); see also 20 C.F.R. § 416.927(e)(1) (ultimate decision regarding disability determinations rests with the Commissioner).  On the other hand, the standard of review of the

_____

[1] While Carolyn W. Colvin was the Acting Commissioner of Social Security as of the date of Judge Aboulhosn's PF&R, Nancy Berryhill became the Acting Commissioner on January 23, 2017.

Commissioner's decision is rather deferential to the Commissioner, for, "[u]nder the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974) (court must scrutinize the record as a whole to determine whether the conclusions reached are supported by substantial evidence); see also 42 U.S.C. § 405(g). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted).

"In reviewing for substantial evidence, [a district court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653. Substantial evidence is by definition more than "a mere scintilla," Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996), but "may be somewhat less than a preponderance," Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1996)).

3

III.  <u>Discussion</u>

A.

The Social Security regulations establish a "sequential evaluation" for the adjudication of disability claims.  <u>See</u> 20 C.F.R. §§ 404.1520(a), 416.920(a).  The first question is whether the claimant is currently engaged in gainful employment.  <u>Id.</u> §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the second question is whether the claimant suffers from a severe impairment.  <u>Id.</u> §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If so, the third question, at issue here, is whether the claimant's impairment or impairments meets or equals any of the specific impairments listed in Appendix 1 to Subpart P of the regulations.  <u>Id.</u> §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If it does, the claimant is considered disabled, and is awarded benefits.  <u>Id.</u>  If not, the inquiry continues on to questions not presently relevant.

The Listing of Impairments, as a general matter, describes, for each anatomical system, impairments that are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. §§ 404.1525(a), 416.925(a).  In order to meet a listing, a claimant's impairment must "meet <u>all</u> of the specified medical criteria."  <u>Sullivan v. Zebley</u>, 493

4

U.S. 521, 530 (1990).  "For a claimant to qualify for benefits by showing that his . . . combination of impairments . . . is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  Id. (citing 20 C.F.R. § 416.926(a)).  The ALJ must identify listings that are relevant to the claimant and compare "'each of the listed criteria to the evidence of [the claimant's] symptoms.'"  Ketcher v. Apfel, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (quoting Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986).

B.

The ALJ concluded that Mr. Marcum had the following severe impairments: cardiac dysrhythmias/late effects of transient ischemic attack (TIA), chronic obstructive pulmonary disease (COPD), and history of Hodgkin's lymphoma.  See Tr., 15. At step three of the sequential analysis, the ALJ determined that plaintiff's impairments failed to meet or equal the severity of any of the impairments listed in Appendix 1, specifically considering Listings 4.05, 3.02, and 13.05.  Id. at 17.

The ALJ stated the following as to why plaintiff did not meet or equal any of those listings:

5

The claimant's heart condition does not meet or equal the criteria of Listing 4.05 because he does not have recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment, and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope.

The claimant's COPD does not meet or equal the criteria of Listing 3.02 because he does not have FEV values equal to or less than 1.55; nor chronic impairment of gas exchange; nor significantly abnormal arterial blood gas values (Exhibit 8F, p.7).

The claimant's history of lymphoma does not meet or equal the criteria of Listing 13.05, because he does not have Hodgkin's disease with failure to achieve clinically complete remission, or recurrent disease within 12 months of completing initial antineoplastic therapy.

Id.

Plaintiff argued that the ALJ did not compare the evidence in the record to the listing criteria, and simply reiterated the language of each listing.  For this reason, plaintiff contended that Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) and Fox v. Colvin, 632 Fed. Appx. 750, 753 (4th Cir. 2015) demanded remand of the case.

The magistrate judge compared the ALJ's step three analysis to those in Radford and Fox and determined that "[t]he ALJ's step three analysis provided more information as to why he found Claimant's severe impairments did not meet or equal the pertinent Listings than those examples provided in the Radford

and <u>Fox</u> cases." PF&R at 25.  Specifically, the magistrate judge noted "the ALJ appropriately explained why he found Claimant did not meet Listing 4.05." <u>Id.</u> at 26.  Further, the magistrate judge stated "the ALJ examined the objective medical evidence of record, specifically concerning Claimant's heart condition, in support of his conclusions in subsequent steps in his analysis." <u>Id.</u>  The magistrate judge then concluded that the ALJ's decision did not amount to the "lack of explanation" that requires remand and was therefore supported by substantial evidence.  <u>Id.</u> at 29.

Plaintiff objects to the magistrate judge's conclusion, stating "it is clear that [the ALJ] simply inserted 'does not have' in front of the criteria for Listing 4.05, 3.02 and Listing 13.05. . . . and did not compare Marcum's specific findings to the criteria of each listing."  Obj., 2-3. Plaintiff further states that the magistrate judge's quotations from the ALJ's decision made it clear that the ALJ was not "comparing Marcum's findings to the criteria of the Listings in subsequent steps of his analysis" and that the ALJ's "recitation/summation of the medical evidence to explain/justify his RFC findings has no bearing on the ALJ's obligations at step three."[2]  <u>Id.</u> at 2.

_____

[2] In plaintiff's objection to the PF&R, he objects solely to the magistrate judge's determination that the ALJ's step three analysis was adequate.  His objection is based on the ALJ's

7

In essence, plaintiff argues that the ALJ failed to evaluate his medical records at step three of the sequential evaluation, which he claims automatically warrants remand based on Radford and Fox.  He contends that the magistrate judge erred in finding that the ALJ's recitation of and evaluation of the medical evidence elsewhere in his decision constituted substantial evidence to support his step three findings that plaintiff did not meet or equal any listing or combination thereof.  Obj. at 2-3.

In Radford, the ALJ's decision that the plaintiff did not meet the pertinent listing was "devoid of reasoning," because the ALJ did not give any basis for his conclusion that the plaintiff did not meet any of the relevant listings.  734 F.3d at 295.  The court concluded that the ALJ's lack of discussion of the listing made it "impossible for a reviewing

---

alleged failure to compare the requirements of each listing to the evidence in the record for Listings 4.05, 3.02, and 13.05. In his brief in support of motion for judgment on the pleadings, plaintiff also raises the failure of the ALJ to address plaintiff's obesity and left ventricular hypertrophy as severe or non-severe impairments in step there as errors, which the magistrate judge thoroughly discussed in his PF&R.  Pl. Brief in Supp. of Judg. on Pleadings at 13.  Because plaintiff did not object to the magistrate judge's determinations on these issues, the court will only address whether the ALJ's determination that plaintiff did not meet or equal Listings 4.05, 3.02 and 13.05 is supported by substantial evidence.

court to evaluate whether substantial evidence supports the
ALJ's findings," particularly considering "probative evidence
strongly suggesting that [the plaintiff] meets or equals" the
pertinent listing and due to the failure of the ALJ to indicate
why he gave more weight to the medical opinions of the state
agency physicians than to the plaintiff's treating physicians.
Id. at 295-96.  Because of these deficiencies, the court
remanded the case to the ALJ.  Radford, 734 F.3d at 296.

        Similarly, in Fox, the ALJ failed to "apply findings
to the disability listing" and "offered nothing to reveal why he
was making his decision" despite "[i]nconsistent evidence" in
the record.  632 Fed. Appx. at 1.  The ALJ did not explain how
he discredited the treating physician's numerous statements that
the plaintiff faced severe limitations that supported a finding
that he met the listing.  Id.  The court refused to "speculate
as to how the ALJ applied the law to its findings or to
hypothesize the ALJ's justifications that would perhaps find
support in the record" and remanded the case to the ALJ.  Id.

        In endeavoring to follow the admonitions of our court
of appeals, a number of district courts in this circuit have
found a step three determination to be supported by substantial
evidence when "the ALJ's opinion read as a whole provides
substantial evidence to support the ALJ's decision at step

9

three," despite a failure to include a pertinent discussion of the evidence at step three of the analysis. See Kiernan v. Astrue, No. 3:12-cv-459, 2013 WL 2323125, (E.D. Va. May 28, 2013); see also McDaniel v. Colvin, No. 2:14-cv-28157, 2016 WL 1271509 (S.D. W.Va. Mar. 31, 2016) (finding that the ALJ's step three conclusion was supported by substantial evidence when the evidence was discussed in other sections of the ALJ's decision); Six v. Colvin, No. 3:15-cv-14377, 2016 WL 7040850 (S.D. W.Va. Dec. 1, 2016) (same). Because the ALJ is only required to review medical evidence once in his decision, McCartney v. Apfel, 28 Fed. Appx. 277, 279 (4th Cir. 2002), if elsewhere the ALJ includes "an equivalent discussion of the medical evidence relevant to [the] Step Three analysis," remand of the case is not required. McDaniel, No. 2:14-cv-28157 at *4 (citing Capillo v. Comm'r of Soc. Sec., No. 5:15-cv-28, 2015 WL 6509127 at *3 (N.D. W.Va. Oct. 28, 2015).

        The court will examine the ALJ's decision in this case and determine whether the explanations and discussion necessary to support the pertinent listing requirements are contained within the ALJ's decision itself. If the court need not look beyond the ALJ's opinion to find substantial evidence supporting the ALJ's step-three determination, the ALJ's decision may be affirmed.

### 1. Listing 4.05

The ALJ first discussed Listing 4.05 as relevant to plaintiff's impairments, which concerns recurrent arrhythmias. Listing 4.05 requires:

> Recurrent arrhythmias . . . resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.05.

The impairment is uncontrolled if it "does not adequately respond to standard prescribed medical treatment." See C.F.R. Pt. 404, Subpt. P, App'x 1, § 4.00(A)(3)(f). It is recurrent if "the longitudinal clinical record shows that, within a consecutive 12-month period, the finding(s) occurs at least three times, with intervening periods of improvement of sufficient duration that it is clear that separate events are involved." Id. at § 4.00(A)(3)(c). An episode of syncope is "a loss of consciousness or a faint" while an episode of near syncope is a "period of altered consciousness . . . . [and] not merely a feeling of light-headedness, momentary weakness, or dizziness." Id. at § 4.00(F)(3)(B).

11

As previously noted, the ALJ's step three analysis only appears to state that plaintiff does not have any of the symptoms required to meet each listing. Tr. at 17. However, at step four of the analysis, the ALJ thoroughly described plaintiff's medical history and sufficiently explained why plaintiff does not met or equal Listing 4.05. The ALJ's discussion of plaintiff's medical history and conclusion clearly show that the ALJ compared the evidence of record to the requirements of Listing 4.05 and determined that plaintiff did not meet or equal the listing. While this discussion did not occur in step three of the evaluation process, the step three conclusion is supported by substantial evidence. The ALJ extensively described plaintiff's medical history in relation to his heart condition. As the magistrate judge noted, the ALJ discussed:

1. Medical records from University of Kentucky Hospital dated April 19, 2011, where plaintiff presented with a history of CVA versus transient ischemic attack (TIA) with a new onset of right-sided weakness and numbness. Tr. at 18. During his stay at the hospital, plaintiff was diagnosed with TIA, and his right-sided weaknesses improved over a short period of time. Id. His workup showed no acute findings

12

concerning a stroke, and his "carotid Doppler, echo, and CT of the head were all within normal limits." Id.

2. Medical Records from University of Kentucky dated August 30, 2012 indicated that plaintiff had a history of paroxysmal atrial fibrillation and neurocardiogenic syncope post pacer in June 2010. Tr. at 19.  Although plaintiff's blood pressure was controlled on medication, "he had some episodes of paroxysmal atrial fibrillation where his heart rate elevated above 110 beats per minute." Id.  He was started on the anticoagulant Lovenox on August 31, 2012 because he only received aspirin for Afib and prevention of stroke while in prison.  Id.

3. Plaintiff's March 20, 2013 records from Charleston Area Medical Center show that he presented at the emergency department with a bad headache and the possibility of another stroke.  Id.  Plaintiff was assessed with a TIA.  Id.  A CT of plaintiff's head "failed to show any clear-cut abnormalities" and "a bilateral carotid duplex showed very mild less than 30% stenosis in the right with mild 30% to 50% in the left internal carotid artery."  Id.

4. Consultative examiner Kip Beard, M.D. evaluated
   plaintiff on April 10, 2013.  Id.  During the
   evaluation, plaintiff described his history of
   neurocardiogenic syncope and stated that he has had
   three episodes of syncope since the pacemaker was
   placed, the last one being in 2012, but he "reported
   no subsequent hospital visits in relation to that."
   Id.  Examination of plaintiff's pacer showed "it was
   with regular rate and rhythm" and Dr. Beard "heard
   no murmurs, gallops, or rubs."  Id.

5. Plaintiff presented at the Cleveland Clinic for
   pacemaker evaluations conducted by Dr. Frederick
   Jaeger in July and September 2013.  Id.  "[A]
   detailed review of symptoms, signs, and physical
   examination demonstrated no arm swelling, syncope,
   pre-syncope, or pocket stimulation related to the
   device.  Id.  In September 2013, the "percentage of
   the ventricular events that were paced . . . was
   2%."  Id.  Plaintiff was instructed to follow up
   with a telephone analysis every three months and a
   clinical analysis yearly.  Id.

6. On December 11, 2013, plaintiff had an
   "electrophysiology study and ablation for his

14

history of paroxysmal atrial fibrillation." <u>Id.</u> at 20.

Based on the evidence, the ALJ concluded that plaintiff's "history of neurocardiogenic syncope/paroxysmal atrial fibrillation appears to be mostly controlled with an implanted cardiac pacer and medications.  Records from the Cleveland Clinic indicated that a detailed review of symptoms, signs, and physical examination demonstrated that [plaintiff] had no arm swelling, syncope, pre-syncope, or pocket stimulation related to the device." <u>Id.</u>

As the evidence contained in the ALJ's decision demonstrates, plaintiff did not have recurrent, uncontrolled episodes of syncope or near-syncope, as required for Listing 4.05.  Plaintiff's medical records indicate that since his pacemaker was inserted, he only had three episodes of syncope, the last one being in 2012.  <u>Id.</u> at 19-20.  The court finds that substantial evidence contained in the ALJ's decision and discussed by him supports a step three finding that plaintiff did not meet or equal Listing 4.05.

### 2. <u>Listing 3.02</u>

Section 3.00 concerns the respiratory system.  <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 3.00.  Listing 3.02 deals

with chronic respiratory disorders.  Id. at § 3.02.  Listing

3.02 is met if a claimant has: (A) FEV1 values less than or

equal to the values contained in Table I-A or Table I-B; (B) FVC

less than or equal to the value in Table II-A or II-B; (C)

chronic impairment of gas exchange demonstrated by DLCO

measurements less than or equal to the values in Table III,

arterial PaO2 and PaCO2 measurements less than or equal to the

values in Table IV-A, IV-B, or IV-C; or SpO2 measured by pulse

oximetry less than or equal to the value in Table V; or (D)

exacerbations or complications requiring three hospitalizations

within a twelve month period of at least forty-eight hours that

are at least thirty days apart.  Id. at § 3.02.

        In the ALJ's decision, he discussed evidence of

plaintiff's respiratory difficulties.  Specifically, on April

10, 2013, plaintiff reported to Dr. Beard that he had issues

with breathing.  Tr. at 19.  Dr. Beard "reported that spirometry

testing revealed moderate COPD.  Id.  However, he noted that

there was no significant clinical exertional dyspnea or evidence

of wheezes, rales or rhonchi."  Id.  In step three of his

analysis, the ALJ also concluded that plaintiff's FEV values

were not less than or equal to 1.55.  Id. at 17.  In conclusion,

the ALJ stated, [w]ith regard to COPD, spirometry testing showed

that [plaintiff] was assessed with moderate COPD at his

16

consultative examination with Dr. Kip Beard.  However, on clinical examination, there was no significant exertional dyspnea or signs of wheezes, rales or rhonchi." Id. at 20.

The court finds that substantial evidence in the ALJ's decision supports the ALJ's determination that plaintiff did not meet or equal Listing 3.02.  Although the ALJ did not detail the evidence in step three of the determination, evidence supporting his decision is contained throughout his decision.  Dr. Beard noted plaintiff had moderate COPD, but that his FEV values were not less than or equal to the values in table I-A or I-B and Dr. Beard found "no significant exertional dyspnea or signs of wheezes, rales or rhonchi." Id. at 19-20.  Further, plaintiff has not argued that any evidence in the record exists that the ALJ did not summarize that supports a finding that he meets or equals the listing.  The ALJ described evidence relating to plaintiff's respiratory difficulties and assessed that he did not meet or equal Listing 3.02.  That determination is supported by substantial evidence.

### 3. Listing 13.05(B)

Section 13.05(B) relates to Hodgkin lymphoma.  Listing 13.05(B) is satisfied if the claimant has:

> Hodgkin lymphoma with failure to achieve clinically
> complete remission, or recurrent lymphoma within 12
> months of completing initial anticancer therapy.

Id.

While the ALJ's step three determination relating to
Listing 13.05 does not include a discussion of the pertinent
evidence, substantial evidence discussed elsewhere in the ALJ's
decision supports his determination that plaintiff does not meet
or equal the listing.  The ALJ discussed records from University
of Kentucky Hospital that indicate plaintiff had a history of
Hodgkin's lymphoma, which was in remission for three years.  Tr.
at 18.  Though CT scan results showed "some new adenopathy in
the chest," in reviewing the results on May 31, 2012, Dr. Roger
Fleischman, M.D. indicated that plaintiff "was not symptomatic
in any way similar to his original presentation with Hodgkin's
disease."  Id. at 18.  Dr. Fleischman also noted that there was
no evidence that the disease reoccurred in the original area of
plaintiff's abdomen.  Id. at 19.  On August 3, 2012 plaintiff
had a mediastinoscopy with biopsy and on November 15, 2012 he
had a super dimension bronchoscopy which was negative for
malignant cells.  Id.  November 21, 2012 records from Pulmonary
Associates of Charleston stated that plaintiff had no decrease
in normal activity and he was assessed as having "lung disease/a
solitary lung nodule" and was instructed to return in three

18

months.  Id.  On April 10, 2013, plaintiff reported his history of Hodgkin's lymphoma to Dr. Beard, who reported that it "continued to be in remission."  Id. at 18, 19.

In conclusion, the ALJ stated that Dr. Beard reported that plaintiff's lymphoma continued to be in remission, that "a CT scan performed in 2012 showed some new adenopathy in the chest," but that Dr. Fleischman "indicated that the claimant was not symptomatic in any way similar to his original presentation with Hodgkin's disease.  Id. at 20.  In addition, a super dimension bronchoscopy was negative for malignant cells."  Id.

Substantial evidence supports the ALJ's determination that plaintiff did not meet or equal Listing 13.05(B).  The ALJ's evaluation of plaintiff's lymphoma history showed that he was in remission and was negative for malignant cells despite CT scan results showing some new adenopathy in his chest in 2012.

## IV.  Conclusion

Contrary to plaintiff's assertions, the present case is distinguishable from Radford and Fox in that it was not necessary for the magistrate judge to reexamine the record in order to determine that the ALJ's step three findings were supported by substantial evidence.  The magistrate judge only examined the decision of the ALJ and concluded that substantial

evidence supported the ALJ's step three determinations elsewhere in his decision.

While an in-depth analysis of why plaintiff did not meet or equal any of the relevant listings was not contained in the ALJ's step three findings, it was not necessary for the court to conduct any fact-finding or investigation in order to determine that substantial evidence supports the ALJ decision that plaintiff does not meet or equal any of the relevant listings. Moreover, plaintiff's objections do not point to any inconsistent evidence of record that is contrary to the ALJ's determinations. See Radford, 734 F.3d at 295. The court finds that substantial evidence supports the ALJ's decision that plaintiff is not disabled.

Accordingly, having received the PF&R and the plaintiff's objections, and having reviewed the record de novo, it is ORDERED:

1.  That the PF&R be, and it hereby is, adopted and incorporated herein;

2.  That the decision of the ALJ be, and it hereby is, affirmed;

3. That judgment be, and it hereby is, granted in favor of the Commissioner; and

20

4.    That this action be, and it hereby is, dismissed and stricken from the docket of the court.

The Clerk is requested to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

DATED: March 23, 2017

John T. Copenhaver, Jr.
United States District Judge